UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| – v.– | |
| SERVINO SIMMON, | |
| Defendant. | |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/28/15

**MEMORANDUM
OPINION & ORDER**

13 Cr. 855 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Defendant Servino Simmon – who pleaded guilty to a felon in possession charge, pursuant to 18 U.S.C. § 922(g) – is scheduled for sentencing on December 29, 2015. In a July 28, 2015 Order, this Court ruled on a number of issues relating to the proper application of the Sentencing Guidelines.[1] (Dkt. No. 99) On October 30, 2015 – at the Defendant's request – this Court conducted a Fatico hearing. In a post-hearing submission, Defendant contends that (1) he should not receive a four-level enhancement under the Sentencing Guidelines for using a firearm in connection with the New York state felony of Coercion in the First Degree; and (2) his 2005 New York state conviction for second degree robbery does not constitute a "crime of violence" under the Guidelines. (Def. Supp. Sent. Br. (Dkt. No. 111)) For the reasons stated below, this Court concludes that a four-level enhancement is appropriate, and that Defendant's second degree robbery conviction constitutes a "crime of violence" under the Sentencing Guidelines.

**BACKGROUND**

**I.    THE TRIAL**

Indictment 13 Cr. 855 (PGG) charges Defendant with (1) Hobbs Act robbery, in violation of 18 U.S.C. § 1951; (2) using a firearm in connection with a crime of violence, in

---

[1]  Familiarity with the July 28, 2015 Order (Dkt. No. 99) is assumed.

violation of 18 U.S.C. § 924(c)(1)(A)(ii), and (3) felon in possession, in violation of 18 U.S.C. § 922(g)(1).  (See Indictment (Dkt. No. 6))

The Government alleged that Simmon used a firearm in attempting to rob a livery car driver at about 5:00 a.m. on October 19, 2013, at East 137th Street and St. Ann's Avenue in the South Bronx.  (Cmplt. ¶ 5(a); Indictment (Dkt. No. 6))  The case proceeded to trial on June 2, 2014.  This Court bifurcated the felon in possession count from the Hobbs Act robbery and Section 924(c) charges.  (Dkt. No. 18)  After several hours of deliberation, the jury returned a verdict acquitting the Defendant on the Hobbs Act robbery and Section 924(c) counts.  (Trial Tr. (Dkt. No. 62) at 510)

After accepting the verdict, this Court informed the jury, for the first time, that there would be a second stage of the trial, in which they would consider another charge against the Defendant.  (Id. at 511)  Both sides gave opening statements concerning the felon in possession charge.  (Id. at 512-14)  Additional evidence was then received concerning this charge.  (Id. at 515-21)  After the parties' closing arguments, this Court instructed the jury as to the felon in possession count.  (Id. at 526-30)  The jury could not reach a verdict on the felon in possession count, however.  Accordingly, this Court declared a mistrial.  (Trial Tr. (Dkt. No. 64) at 547-48)

## II.   GUILTY PLEA AND PLEA AGREEMENT

On August 8, 2014, Defendant pleaded guilty to Count Three – the felon in possession charge – before Magistrate Judge Netburn.  (Plea Tr. (Dkt. No. 71))  This Court signed an order accepting the plea on August 11, 2014.  (Dkt. No. 70)

Defendant pleaded guilty pursuant to a plea agreement that contains a number of stipulations regarding the application of the Sentencing Guidelines, both as to offense level and

2

as to criminal history. As to Defendant's offense level, the plea agreement stipulates that, pursuant to U.S.S.G. § 2K2.1(a)(4)(A), the base offense level is 20, "because the defendant committed the instant offense subsequent to sustaining a felony conviction for a crime of violence, to wit, a conviction on or about April 15, 2005 in New York County Supreme Court of Robbery in the Second Degree." (Plea Agmt. (Dkt.No. 95) at 2)

## III.   SENTENCING ISSUES

On September 15, 2014, this Court issued an order directing the parties to address five potential Sentencing Guidelines enhancements that are not discussed in any fashion in the plea agreement. (Dkt. No. 73) On October 27, 2014, Defendant filed a sentencing brief containing a motion to withdraw his guilty plea. (Oct. 27, 2014 Def. Sent. Mem. (Dkt. No. 96) at 2-11) This Court denied that application in a November 10, 2014 bench ruling. (See Dkt. No. 78) This Court again ordered the parties to brief the applicability of the Sentencing Guidelines enhancements listed in its September 15, 2014 Order. (Nov. 10, 2014 Conf. Tr. (Dkt. No. 84) at 20-22) The parties addressed these potential enhancements in submissions filed on November 17, 2014, March 17, 2015, and April 24, 2015. (Dkt. Nos. 81, 82, 87, 90)

On July 28, 2015, this Court issued a memorandum opinion and order concluding that the Defendant's Guidelines range is 100-125 months' imprisonment.[2] (Dkt. No. 99) On August 14, 2015, Defendant renewed his motion to withdraw his guilty plea, arguing that he is entitled to withdraw his plea because this Court had concluded that he is subject to a higher Guidelines range than the plea agreement contemplates. (Dkt. No. 102) In the alternative, Defendant requested that a Fatico hearing be conducted regarding the factual basis for one of the

---

[2]  Because the felon in possession offense carries a statutory maximum sentence of ten years' imprisonment, the applicable Guidelines range is 100 to 120 months' imprisonment. (Sept. 9, 2015 Order (Dkt. No. 106) at 2 n.2).

Sentencing Guidelines enhancements, and that this Court recuse itself.  (Id.)  In a September 9,

2015 order, this Court denied Defendant's motion to withdraw his guilty plea and recusal

request, but agreed to conduct a <u>Fatico</u> hearing concerning the issue of whether the Defendant

had used a firearm to commit the New York state felony of Coercion in the First Degree.  (Dkt.

No. 106)

   The <u>Fatico</u> hearing took place on October 30, 2015.  The Government chose to

rely on the testimony at trial, and did not offer additional evidence.  (Dkt. No. 107)  Defendant

called the alleged victim, Laye Kromah, a livery car driver.  (Dkt. No. 109)

   On November 20, 2015, Defendant filed a supplemental sentencing

memorandum.  (Dkt. No. 111)  Defendant argues that (1) he did not commit the state crime of

coercion, and therefore the four-level enhancement for using and possessing a firearm in

connection with the commission of a felony should not be imposed; and (2) this Court erred in

concluding that Defendant's 2005 second degree robbery conviction is a "crime of violence"

under the Sentencing Guidelines, and improperly increased Defendant's base offense level by

four levels.  (Id.)  In a December 12, 2015 letter, the Government argues that Defendant's 2005

robbery conviction constitutes a "crime of violence" under the Sentencing Guidelines.  (Dkt. No.

114)

## DISCUSSION

**I. DEFENDANT'S USE OF A FIREARM TO
  COMMIT FIRST DEGREE COERCION**

   Under U.S.S.G. § 2K2.1(b)(6)(B), a defendant convicted of unlawful possession

of a firearm is subject to a four-level increase if the defendant "used or possessed any firearm or

ammunition in connection with another felony offense . . . ."  In its September 15, 2014 Order,

this Court directed the parties to address, <u>inter alia</u>, "whether Defendant used or possessed a

firearm in connection with another felony offense under U.S.S.G. § 2K2.1(b)(6)(B) & cmt. n.14"

and, in particular, "whether the evidence adduced at trial demonstrated that Defendant committed

the crime[] of Coercion in the First Degree – in violation of N.Y. Penal Law § 135.65 – when he

allegedly demanded that Mr. Kromah drive him to 137th Street and St. Ann's Avenue . . . ."

(Sept. 15, 2014 Order (Dkt. No. 73) at 2)

       New York Penal Law § 135.65 provides that a person is guilty of the felony

offense of Coercion in the First Degree when he "compels or induces a person to engage in

conduct which the latter has a legal right to abstain from engaging in, or to abstain from

engaging in conduct in which he or she has a legal right to engage," by "instilling in the victim a

fear that he . . . will cause physical injury to [the] person or cause damage to property." N.Y.

Penal Law §§ 135.60, 135.65(1).

       In its July 28, 2015 Order, this Court found that Kromah's trial testimony "was

entirely credible on the issue of whether Defendant threatened him with a firearm in order to

induce him to drive Defendant to a second location." (July 28, 2015 Order (Dkt. No. 99) at 17)

As this Court noted in the July 28 Order,

> [t]hrough an interpreter, Kromah testified: "[Defendant] said if I don't go to [137th and
> St. Ann's Avenue], he going to shoot me with a gun. . . . He [then] point[ed] the gun at
> me." (Trial Tr. (Dkt. No. 46) at 34) In English, Kromah testified that "[Defendant] said,
> I go to 137, St. Anns. I say, I don't want to go there. He said, if you don't go there, I
> going to kill you." (Id. at 35) In sum, Kromah's testimony [at trial] very clearly sets
> forth that Defendant explicitly threatened him with harm if Kromah refused to drive the
> Defendant to the second location.

(Id. at 20) This Court further concluded that, under the circumstances, Kromah had a "legal right

to abstain from [driving Defendant to the second location]." (Id. at 21-23)

       In this Court's September 9, 2015 Order, it noted that "[t]here may be an

argument that defense counsel had less incentive to cross-examine Kromah about the alleged

coercion at trial than he would at a sentencing hearing, given that the Defendant was not charged with coercion at trial but now faces a four-level enhancement for coercion under the Guidelines." (Sept. 9, 2015 Order (Dkt. No. 106) at 8)  Accordingly, this Court scheduled a <u>Fatico</u> hearing for October 30, 2015.  At that hearing, the Defendant questioned Kromah about his interaction with the Defendant on the night of October 19, 2013.

Kromah's testimony at the <u>Fatico</u> hearing concerning the alleged coercion mirrored his trial testimony on this point.  At the <u>Fatico</u> hearing, Kromah testified that the Defendant demanded that Kromah drive him to a second location, that Kromah refused, and that the Defendant – brandishing a firearm – then threatened to shoot Kromah if he did not drive to the second location:

> Q: Now, after you asked him for money, is that when [the Defendant] told you he wanted to go to another place?
>
> A: When we reach his destination, he asked me to go to another location.
>
> Q: And you said no?
>
> A: I said no.
> Q: And after you said no, then what happened?
>
> A: He forced me to go where else he wanted to go.
>
> Q: When you say he forced you to go, what do you mean, he forced you to go?
>
> A: When I was to where I reached, he asked me to go to where – he forced me we were supposed to go.
>
> Q: How did he force you to go?
>
> A: He point a gun at me.
>
> Q: When is your claim that he pointed a gun at you? When did that happen?
>
> A: After he asked me to go, I said I'm not going. The back and forth, in that process, in that moment he point the gun at me.

6

(Sent. Hearing Tr. (Dkt. No. 109) at 14)  Kromah gave the same account at trial.  (Trial Tr. (Dkt. No. 46) at 33-34)

Kromah's trial and hearing testimony demonstrates that Defendant committed the New York state felony of Coercion in the First Degree.  By "point[ing] a gun at [Kromah]," Defendant "instill[ed] in [Kromah] a fear that he . . . w[ould] cause physical injury," and thereby "compel[led] or induce[d] [Kromah] "to engage in conduct which [Kromah] has a legal right to abstain from engaging in" – in this case, driving Defendant to a second location.[3]   See Sent. Hearing Tr. (Dkt. No. 109) at 14; New York Penal Law § 135.65.  Indeed, Kromah testified that he "was . . . afraid and panic[ked]" after Defendant pointed the gun at him, and that it was for this reason that he drove to the second location.  (Id. at 15)

Defendant argues that Kromah's testimony on this issue "is riddled with contradictions, improbable 'coincidences,' and implausible behaviors and actions," and that his testimony is "squarely at odds with the testimony of Police Officer Alejandro Azcona, the only other government witness with knowledge of any of the relevant events."  (Def. Supp. Sent. Br. (Dkt. No. 111) at 8)  None of these criticisms is accurate.

Although Defendant argues that Kromah's actions are "not the actions of a man who has just been terrorized by a gun and who is fleeing for his life," and that it is "far likelier" that Kromah "picked up Mr. Simmon[,] . . . drove to Kromah's home[, and] . . . told Mr. Simmon that was as far as he was going and Simmon could walk the rest of the way to [his requested destination,]" (id. at 10, 12), this is mere conjecture and speculation.  There is no evidence that

---

[3]  As noted above, in the July 28, 2015 memorandum opinion and order, this Court concluded that Kromah had a legal right to refuse to take Defendant to a second location.  (July 28, 2015 Order (Dkt. No. 99) at 21-23)

supports Defendant's account.  Only Kromah testified about what took place between him and Defendant when the livery car arrived at the first location.  Kromah's testimony on this point – both at trial and at the <u>Fatico</u> hearing – was entirely credible and there is no contrary evidence.

Defendant's argument that Kromah's testimony is "squarely at odds" with that of Officer Azcona (<u>id.</u> at 10-11) is similarly baseless.  Officer Azcona did not observe what happened when Kromah's livery car arrived at the first location, and he offered no testimony concerning this issue.  To the extent that Officer Azcona's testimony about what happened at the <u>second</u> destination differs from Kromah's testimony, it does not alter this Court's conclusion that Kromah testified credibly that Defendant used a firearm to threaten Kromah and to force him to drive to the second destination.[4]

This Court finds, by a preponderance of the evidence, that Defendant used or possessed a firearm in connection with committing the New York state felony offense of Coercion in the First Degree.  Accordingly, a four-level enhancement to the Defendant's offense level will be imposed pursuant to U.S.S.G. § 2K2.1(b)(6)(B).

## II.     DEFENDANT'S CONVICTION FOR SECOND DEGREE ROBBERY CONSTITUTES A "CRIME OF VIOLENCE" UNDER THE SENTENCING GUIDELINES

Defendant argues that his May 3, 2005 conviction for second degree robbery – for which he was sentenced to six years' imprisonment and five years' post-release supervision (PSR ¶ 35) – is not a "crime of violence" within the meaning of U.S.S.G. § 4B1.2(a).  (Def. Supp. Sent. Br. (Dkt. No. 111) at 15-25)

---

[4]  Until now, Defendant has contended that Officer Azcona's account of what transpired at 137th Street and St. Ann's Avenue is not credible.  Indeed, in summation, defense counsel stated that Officer Azcona's account "is simply not possible" and "just doesn't make any sense at all." (Trial Tr. (Dkt. No. 62) at 419-20; <u>see also</u> <u>id.</u> at 423-28, 442-44)

The base offense level for a conviction under 18 U.S.C. § 922(g)(1) varies depending on a defendant's criminal record. Where a defendant has "sustain[ed] at least two felony convictions of either a crime of violence or a controlled substance offense," the base offense level is 24. U.S.S.G. § 2K2.1(a)(2). Where a defendant has one felony conviction for either a crime of violence or a controlled substance offense, the base offense level is 20. U.S.S.G. § 2K2.1(a)(4)(A). Here, as set forth in this Court's July 28, 2015 memorandum opinion and order, Defendant's 2000 conviction for first degree robbery qualifies as a "crime of violence." (July 28, 2015 Order (Dkt. No. 99) at 9-12)

Defendant argues, however, that his 2005 conviction for second degree robbery does not constitute a "crime of violence," because that crime does not necessarily involve the use of violent force. (Def. Supp. Sent. Br. (Dkt. No. 111) at 15-25 (citing Johnson v. United States, 559 U.S. 133 (2010) and United States v. Reyes, 691 F.3d 453 (2d Cir. 2012)) Defendant stipulated in the plea agreement, however, that he "committed the instant offense subsequent to sustaining a felony conviction for a crime of violence, to wit, a conviction on or about April 15, 2005 in New York County Supreme Court of Robbery in the Second Degree." (Plea Agmt. (Dkt. No. 95) at 2) In the Second Circuit, parties may not challenge terms in a plea agreement unless enforcing the term would violate a defendant's due process rights. See United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011) (explaining, in the context of appeal waivers, that plea agreements are "construe[d] . . . 'according to contract law principles'" unless "special due process concerns for fairness and the adequacy of procedural safeguards" counsel otherwise); United States v. Vaval, 404 F.3d 144, 153, 153 n.4 (2d Cir. 2005) (finding that, although the government was permitted to advise the district court that the plea agreement had mistakenly recommended a two-point rather than three-point enhancement for the defendant's role in the

offense because that was "information relevant to sentencing," the government was not permitted to argue that the information should affect the court's sentencing decision because it had agreed otherwise in the plea agreement); United States v. Granik, 386 F.3d 404, 412-13 (2d Cir. 2004) (in enforcing plea agreement, noting that "[i]f defendants are not held to their factual stipulations [in plea agreements], . . . the government has no reason to make concessions in exchange for them"); United States v. Spiegelman, 4 F. Supp. 2d 275, 285 (S.D.N.Y. 1998) (noting that the parties to a plea agreement are bound by its terms).

Here, Defendant has not acknowledged his stipulation that his second degree robbery conviction constitutes a "crime of violence" under the Sentencing Guidelines, much less demonstrated that there is a due process issue concerning that stipulation.  Having stipulated in his plea agreement that his 2005 second degree robbery conviction is a "crime of violence," Defendant cannot argue the contrary now.

This Court has an independent obligation to accurately calculate the applicable Guidelines range, however, Spiegelman, 4 F. Supp. 2d at 285, and in that context the Court has considered whether Defendant's 2005 conviction for second degree robbery qualifies as a "crime of violence."

A.      **Defendant's 2005 Conviction for Second Degree Robbery**

The Pre-Sentence Report states that Defendant's 2005 second degree robbery conviction arises from an August 2004 incident in which he and three others "kicked[,] punched, . . . and removed property from the victim." (PSR ¶ 36)  Defendant proceeded to trial in April 2005 on two counts of second degree robbery in New York County Supreme Court. (Dec. 12, 2015 Gov. Ltr. (Dkt. No. 114), Ex. A (Certificate of

Disposition); Ex. B (<u>People v. Servino Simmons</u>, Indictment #5320-04, Apr. 11, 2005

Trial Tr.) at 8-10)[5]

   Count One of the Indictment alleged a violation of New York Penal Law §

160.10(1), which provides that a "person is guilty of robbery in the second degree when

he forcibly steals property and when 1. He is aided by another person actually present

. . . ." <u>See</u> <u>id.</u>; New York Penal Law § 160.10(1).  Count Two of the Indictment alleged a

violation of New York Penal Law § 160.10(2)(a), which provides that a "person is guilty

of robbery in the second degree when he forcibly steals property and when . . . 2. In the

course of the commission of the crime or of immediate flight therefrom, he or another

participant in the crime:  (a) Causes physical injury to any person who is not a participant

in the crime. . . ." <u>See</u> Dec. 12, 2015 Gov. Ltr. (Dkt. No. 114), Ex. A (Certificate of

Disposition); New York Penal Law § 160.10(2)(a).

   The trial judge instructed the jury that in order to find Defendant guilty on

Count Two – which charged a violation of New York Penal Law § 160.10(2)(a) – the

People had to prove

> beyond a reasonable doubt[] each of the following six elements.  (1) that on or
> about August 22, 2004, in the County of New York, the defendant stole property,
> cell phone, two chains and other personal property; (2) that the defendant stole
> the property with the intent to deprive another of it or appropriate it to himself or
> a third person; (3) that the defendant stole the property from Mr. Guerrero[, the
> victim,] and [he] was the owner of the property; (4) that the defendant forcibly
> stole such property; (5) that in the course of the commission of such forcible
> stealing or immediate flight therefrom the defendant caused physical injury to
> Mr. Guerrero[, the victim].  Physical injury means impairment of physical
> condition or substantial pain.  (6) that Mr. Guerrero[, the victim,] was not a
> participant in the crime.  A participant is one who knowingly takes part of the
> shares of the alleged robbery with another or others.

---

[5] Page citations are as reflected on this District's ECF system.

(Dec. 12, 2015 Gov. Ltr. (Dkt. No. 114), Ex. B (People v. Servino Simmons, Indictment #5320-04, Apr. 11, 2005 Trial Tr.) at 9)  The trial judge repeated at two other points in the charge that a conviction on Count Two required proof that Simmon had "caused physical injury to Mr. Guerrero[, the robbery victim]."  (Id. at 8, 10)  The jury found Simmon guilty on both counts of second degree robbery, including the Count Two charge under Penal Law § 160.10(2)(a).  (Id. Ex. A (Certificate of Disposition))  Simmon was sentenced to six years' imprisonment and five years' post-release supervision.  (Id.)

> ### B.    Sentencing Guidelines Definition of "Crime of Violence"
>
> U.S.S.G. § 4B1.2(a) defines a "crime of violence" as

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

The language of clause (1) and (2) above is identical to the language used in 18 U.S.C. § 924(e)(2)(B)(i) and (ii), which defines the term "violent felony" for purposes of the Armed Career Criminal Act.  See 18 U.S.C. § 924(e)(2)(B).  The Armed Career Criminal Act imposes a fifteen-year minimum mandatory sentence on a defendant convicted under 18 U.S.C. § 922(g) where the defendant has three prior convictions for a "violent felony."  See 18 U.S.C. § 924(e)(1).

In <u>Johnson v. United States</u>, 135 S. Ct. 2551, 2557, 2563 (2015), the Supreme Court struck down as unconstitutionally vague the so-called "residual clause" of Section 924(e)(2)(B)(ii), which defines "crime of violence" to include any crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." The Second Circuit has stated that "cases interpreting the [Armed Career Criminal Act's] definition of 'violent felony' are highly persuasive in interpreting the Guidelines' definition of 'crime of violence.'" <u>United States v. Reyes</u>, 691 F.3d 453, 458 n.1 (2d Cir. 2012) (citing <u>United States v. Walker</u>, 595 F.3d 441, 443 n.1 (2d Cir. 2010); <u>United States v. Palmer</u>, 68 F.3d 52, 55 (2d Cir. 1995)). Accordingly, in light of <u>Johnson</u> and <u>Reyes</u>, the Defendant's 2005 second degree robbery conviction only qualifies as a "crime of violence" if it "has as an element the use, attempted use, or threatened use of physical force against the person of another . . . ." U.S.S.G. § 4B1.2(a)(1).

In determining whether a prior conviction is a conviction for a "crime of violence" within the meaning of U.S.S.G. § 4B1.2(a), a court must look to the elements of the New York state crime for which the defendant was previously convicted, not the conduct underlying that prior conviction. <u>See</u> <u>Reyes</u>, 691 F.3d at 459 (explaining that, where the Guidelines language "clearly focuses on the defendant's <u>conviction</u>, not the defendant's conduct in a particular case[,]" courts may not consider for Guidelines purposes the conduct giving rise to the prior conviction) (emphasis in original) (citing <u>Taylor v. United States</u>, 495 U.S. 575, 600-01 (1990)).

Application Note 1 to U.S.S.G § 4B1.2(a) states that a "crime of violence" "includes . . . robbery." U.S.S.G. § 4B1.2(a) cmt. 1. "[C]ommentary in the Guidelines that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal

statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38 (1993).

Moreover, in United States v. Spencer, 955 F.2d 814 (2d Cir. 1992), the Second Circuit concluded that the New York state offense of robbery in the third degree – which is a lesser included offense of robbery in the second degree – "fits comfortably within [U.S.S.G.] section 4B1.2, and constitutes a 'crime of violence' for purposes of the 'Career Offender' provision of the Guidelines." Spencer, 955 F.2d at 820. In reaching this conclusion, the Second Circuit noted that New York defines robbery as "forcibly steal[ing] property," and accordingly the offense of robbery in the third degree includes as an element of the offense the use of physical force. Id.

Defendant argues, however, that more recent Supreme Court and Second Circuit decisions have implicitly overruled Spencer and abrogated the Guidelines' definition of a "crime of violence" to the extent that definition includes all forms of robbery. (See Def. Supp. Sent. Br. (Dkt. No. 111) at 16)

Defendant notes that in Johnson v. United States, 559 U.S. 133 (2010), the Supreme Court concluded that the term "physical force" – as used in connection with the definition of "violent felony" set forth in the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii) – "means violent force—that is, force capable of causing physical pain or injury to another person." Id. at 140 (emphasis in original). In United States v. Reyes, the Second Circuit held that the same analysis applies to the definition of "crime of violence" set forth in U.S.S.G. § 4B1.2(a). See Reyes, 691 F.3d at 458, 458 n.1. The Reyes court explained that not every offense that has as an element the use of physical force constitutes a "crime of violence" under U.S.S.G. § 4B1.2(a). Id. Instead, the predicate crime must have as an element

14

of the offense the use of "violent force," as defined by the Supreme Court in <u>Johnson</u>. <u>Id.</u>

(applying <u>Johnson</u>'s definition of "violent felony" in construing "crime of violence" as used in

U.S.S.G. § 4B1.2(a)).  Accordingly, this Court must determine whether Defendant's second

degree robbery conviction necessarily involves "violent force" as defined by the <u>Johnson</u> court.

C.   **Predicate Offense Determination**

The Second Circuit has stated that,

> [i]n determining whether a prior conviction can serve as a predicate offense . . ., courts generally take a categorical or modified categorical approach.  Under the categorical approach, "[courts] consider the offense generically, that is to say, [they] examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion," . . . whereas under the modified categorical approach [courts] may consider facts underlying the prior conviction if they are based upon "adequate judicial record evidence[.]"

<u>United States v. Beardsley</u>, 691 F.3d 252, 259 (2d Cir. 2012) (footnote and citations omitted).  In

<u>United States v. Savage</u>, 542 F.3d 959 (2d Cir. 2008), the Second Circuit described the

"categorical inquiry" as follows:

> . . . in the categorical inquiry, [a court] ask[s] whether the statute of the prior conviction criminalizes conduct that falls exclusively within the federal definition of a predicate offense.  If so, "there is no problem, because the conviction necessarily implies that the defendant has been found guilty of" a predicate offense. . . .

<u>Savage</u>, 542 F.3d at 964 (quoting <u>Taylor</u>, 495 U.S. at 599); <u>see also</u> <u>Reyes</u>, 691 F.3d at

458 (the categorical inquiry "requires the court to determine 'whether the statute of the

prior conviction criminalizes conduct that falls exclusively' within the Guidelines'

definition of 'crime of violence.'. . . If so, the inquiry ends."  (citing <u>Savage</u>, 542 F.3d at

964).  Here, the categorical approach is appropriate, because the state statute under

which Defendant was convicted requires proof that the Defendant "[c]ause[d] physical

injury to [someone] who [was] not a participant in the crime." See New York Penal

Law §160.10(2)(a).

Defendant was charged with and convicted of second degree robbery

under New York Penal Code § 160.10(2)(a). (See Dec. 12, 2015 Gov. Ltr. (Dkt. No.

114), Ex. A (Certificate of Disposition); Ex. B (People v. Servino Simmons, Indictment

#5320-04, Apr. 11, 2005 Trial Tr.) at 8-10)  As noted above, Penal Law § 160.10(2)(a)

provides that a "person is guilty of robbery in the second degree when he forcibly steals

property and when . . . 2. In the course of the commission of the crime or of immediate

flight therefrom, he or another participant in the crime:  (a) Causes physical injury to any

person who is not a participant in the crime. . . ."  New York Penal Law § 160.10(2)(a).

Accordingly, the second degree robbery offense Defendant was convicted of requires

proof that, in "forcibly steal[ing] property," he "cause[d] physical injury to [another]

person."  Id.  Given that it is an element of Defendant's state offense that a participant in

the crime caused physical injury to another, this conviction meets the Supreme Court's

definition of "violent force," which is "force capable of causing physical pain or injury to

another person."  See Johnson, 559 U.S. at 140.  The use of such "violent force" during

the commission of a robbery is sufficient to satisfy the Sentencing Guidelines definition

of a "crime of violence" as interpreted by the Supreme Court and the Second Circuit.

Defendant cites a number of New York cases upholding second degree robbery

convictions where violent force was not used.  (Def. Supp. Sent. Br. (Dkt. No. 111) at 18-20)

These cases are irrelevant, however, because they do not address Section 160.10(2)(a) and its

"physical pain or injury" element.  See People v. Bennett, 631 N.Y.S.2d 834, 834 (N.Y. App.

Div. 1st Dep't 1995) (noting generally that robbery need not involve a victim who was

16

"physically injured or touched"); People v. Patton, 585 N.Y.S.2d 431, 431 (N.Y. App. Div. 1st

Dep't 1992) (defendant's activity as a "blocker" sufficient to sustain a robbery conviction);

People v. Lee, 602 N.Y.S.2d 138, 139 (N.Y. App. Div. 1st Dep't 1993) (bumping a victim

sufficient to prove force); People v. Bennett, 592 N.Y.S.2d 918, 918 (N.Y. App. Div. 1st Dep't

1993) (shoving sufficient to establish force); People v. Safon, 560 N.Y.S.2d 552, 552 (N.Y. App.

Div. 4th Dep't 1990) (evidence sufficient to establish the use of force); People v. Brown, 663

N.Y.S.2d 539, 540 (N.Y. App. Div. 1st Dep't 1997) (evidence sufficient to establish the use of

force).   The issue here, however, is not whether every conviction under every subsection of Penal

Law § 160.10 requires physical injury.   Defendant was not convicted of a violation of Penal Law

§ 160.10 generally.   Instead, he was charged with and convicted of violating Penal Law §

160.10(2)(a), and that provision requires proof of a physical injury.[6]

---

[6] In People v. Brown, 653 N.Y.S.2d 301, 303 (N.Y. App. Div. 1st Dep't 1997), also cited by
Defendant (see Def. Supp. Sent. Br. (Dkt. No. 111) at 21-22), the First Department upheld a
second degree robbery conviction where a participant in the robbery shoved the victim – causing
him to fall and suffer a physical injury – in order to help the defendant escape.   Brown, 653
N.Y.S.2d at 303.   To the extent that the Brown court states in dicta that the conviction could also
be upheld on the theory that it was reasonably foreseeable to the Defendant that the victim would
fall and suffer injury in chasing him, that statement does not change this Court's view that Penal
Law § 160.10(2)(a) requires proof that the Defendant caused a physical injury to the robbery
victim.

Defendant's reliance on Chrzanoski v. Ashcroft, 327 F.3d 188 (2d Cir. 2003), is likewise
misplaced.   (Def. Supp. Sent. Br. (Dkt. No. 111) at 22)   In that case, the Second Circuit
concluded that a Connecticut assault statute required proof of a physical injury but not the use of
force.   Chrzanoski, 327 F.3d at 195.   Here, Penal Law § 160.10(2)(a) explicitly requires that the
defendant "forcibly steal[] property."   New York Penal Law § 160.10(2)(a).

## CONCLUSION

For the reasons stated above, a four-level increase pursuant to U.S.S.G.

§ 2K2.1(b)(6)(B) is appropriate, because the Defendant used and possessed a firearm in

connection with committing the New York state felony offense of Coercion in the First Degree.

This Court further concludes that Defendant's base offense level is 24, because his violation of

18 U.S.C. § 922(g) took place after two felony convictions for crimes of violence.  U.S.S.G. §

2K2.1(a)(2).

Dated: New York, New York
       December 28, 2015

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge